IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIA KARDOSH, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1946 |
| | : | |
| CHERYL MCCALLIN, | : | |
|     Defendant. | : | |

<u>MEMORANDUM</u>

SÁNCHEZ, J.                                                                                               MAY 5, 2025

Plaintiff Julia Kardosh initiated this *pro se* civil action against Cheryl McCallin, Esquire, based on McCallin's representation of Kardosh in a Pennsylvania state court child dependency matter. Kardosh seeks leave to proceed *in forma pauperis*. For the reasons that follow, the Court will grant Kardosh leave to proceed *in forma pauperis* and dismiss her Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.      **FACTUAL ALLEGATIONS**[1]

Kardosh invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and styles this civil action as one for breach of contract and tort claims. (*See* Compl. at 1-13.[2]) She pleads that she is a citizen of the State of New Jersey and McCallin is a citizen of the

---

[1] The factual allegations are taken from the Complaint and publicly available records of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings). This is the third civil action Kardosh has commenced in federal court related to the state court dependency matter. *See Kardosh v. Chester County and the Municipality of West Goshen, et al.*, Civil Action No. 24-5918 ("*Kardosh I*") and *Kardosh v. Chester County, et al.*, Civil Action No. 25-1344 ("*Kardosh II*").

[2] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Commonwealth of Pennsylvania. (*Id*. at 2-3.)

Kardosh alleges she retained McCallin on August 14, 2020, to represent her in family court proceedings in a custody dispute with the father of her two minor children. (*Id.* at 2.) She avers that she paid McCallin for legal representation and entrusted her with "sensitive, protected information regarding her custody case." (*Id.*) Kardosh claims that one year before she retained McCallin, however, McCallin was contacted by Kardosh's parents, who are the maternal grandparents of the children who are the subject of the Pennsylvania custody matter ("the grandparents"). (*Id.*) Kardosh asserts the "grandparents sought legal advice regarding pursuing grandparents' rights against" her. (*Id.*) She claims McCallin failed to disclose her prior contact with the grandparents when Kardosh retained her, resulting in a conflict of interest in violation of the Pennsylvania Rules of Professional Conduct. (*Id.* at 3.)

The remaining allegations in Kardosh's Complaint are somewhat difficult to discern. She claims that after she paid $3,000 retain to McCallin, McCallin filed a motion for a continuance of the custody matter, which included a provision that the grandparents intended to seek intervention in the matter. (*Id.*) Kardosh asserts McCallin failed to provide her with a copy of the motion and the filing of the motion was against her interests and sabotaged her case. (*Id.*) According to Kardosh, six weeks after McCallin filed the motion for a continuance, on September 30, 2020, McCallin left a voicemail message for Kardosh "stating that due to what she heard about what transpired at the hearing and felt that the grandparents should intervene in custody." (*Id.*) She further claims "[o]n October 20, 2020, Defendant sent a conflict waiver to the grandmother, the adverse party she had been colliding [sic] with through snail beginning the day after Plaintiff retained her" and the "waiver was vague, lacking sufficient details about the nature and scope of the conflict." (*Id.*) Kardosh alleges McCallin refused to answer her questions about the waiver, ignored all attempts at communication, and declined to explain the

implications of signing it. (*Id.*) Kardosh contends she was unable to make an informed decision about the conflict waiver as a result.[3] (*Id.* at 4.) She surmises that McCallin "improperly utilized privileged information" to the advantage of the grandparents. (*Id.*)

McCallin ceased representation of Kardosh at some point and began to represent the grandparents in the custody proceeding, although the Complaint does not allege when this occurred. Kardosh contends the motion for a continuance McCallin filed was adverse to Kardosh's interests and it was filed before the conflict waiver was signed. (*Id.*) Kardosh further claims McCallin "cherry picked by referral" Kardosh's new counsel. (*Id.*) A custody hearing was held on December 10, 2020 and the grandparents were permitted to intervene.[4] (*Id.*) Kardosh contends "the motion, and Defendant's failure to inform or consult Plaintiff, influenced the court's view of the case." (*Id.*) As alleged, McCallin failed to challenge the grandparents' standing to intervene and, instead, convinced the court to grant the grandparents shared legal custody of the children, demonstrating a betrayal of Kardosh's trust and interests and a breach of McCallin's ethical duties. (*Id.* at 5.) Kardosh asserts that McCallin's misconduct caused her the loss of a fair opportunity to present her case in the custody proceedings, financial losses due to ineffective representation, emotional distress, and harmed her parental rights. (*Id.*)

Based on these allegations, Kardosh presents claims for breach of contract, fraudulent misrepresentation, breach of fiduciary duty, "constructive fraud," and intentional infliction of emotional distress. (*Id.* at 6-9.) She also argues that the applicable statutes of limitations should

---

[3] Kardosh alleges that the waiver was predated "by the opposing party." (Compl. at 4.)

[4] Kardosh also alleges that an emergency custody hearing was held "in which [Kardosh] left with 100% custody of her children" and Kardosh and the children's father were ordered to undergo psychiatric evaluations. (Compl. at 3.)

be tolled based on the discovery rule, McCallin's fraudulent concealment, or public policy. (*Id.* at 9-10.) As relief, she seeks money damages. (*Id*. at 11-12.)

## II.     STANDARD OF REVIEW

The Court will grant Kardosh leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, a court may dismiss a complaint based on an affirmative defense, such as the statute of limitations "when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

As Kardosh is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts

4

in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

IV.   **DISCUSSION**

Kardosh's Complaint is best construed as asserting state law claims for legal malpractice premised on breach of contract and breach of fiduciary duty theories, as well as claims of fraud and intentional infliction of emotional distress. (*See* Compl. at 6-9 (Count I – Breach of Contract; Count II – Fraudulent Misrepresentation; Count III – Breach of Fiduciary Duty; Count IV – Constructive Fraud; Count V – Intentional Infliction of Emotional Distress).[5]) Upon review of the Complaint in its entirety and construing her allegations liberally, Kardosh, nonetheless, has failed to plead a plausible claim under any of these legal theories.

A.   **Legal Malpractice**

Under Pennsylvania law, an action for legal malpractice may be brought in either contract or tort. *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. Super. Ct. 2007). "A legal malpractice claim based on breach of contract, involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Dougherty v. Pepper Hamilton LLP*, 133 A.3d 792, 796 (Pa. Super. Ct. 2016).[6]  "[T]he attorney's liability must be assessed

---

[5] Counts II and IV of the Complaint are duplicative and will be addressed together.

[6] The statute of limitations for such a claim is four years. 42 Pa. Cons. Stat. § 5525.

5

under the terms of the contract. Thus, if the attorney agrees to provide . . . her best efforts and fails to do so, an action in assumpsit will accrue." *Id.* (citing *Fiorentino v. Rapoport*, 693 A.2d 208, 213 (Pa. Super. Ct. 1997) (citations omitted).). "[A]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Wachovia Bank, N.A.*, 935 A.2d at 570-71 (citations omitted).

To recover damages in a malpractice action premised on a breach of fiduciary duty, the plaintiff must prove: (1) the existence of a fiduciary relationship with the defendant; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (3) that this caused the plaintiff to suffer injury. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023); *see also Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992) ("Courts have also allowed civil actions for damages for an attorney's breach of his fiduciary duties by engaging in conflicts of interest." (citing cases)); *Live Nation Ent., Inc. v. Weber Gallagher Simpson Stapleton Fires & Newby, LLP*, 2024 WL 4785011 (Pa. Super. Ct. 2024); *Simons v. Royer Cooper Cohen Braunfeld, L.L.C.*, 587 F. Supp. 3d 209, 219 (E.D. Pa. 2022).

Kardosh's legal malpractice claim premised on a breach of contract, however, cannot proceed. When a party brings both tort and contract claims stemming from the same underlying conduct, "a court must decide 'whether the claim is truly one in tort, or for breach of contract.'" *Brenco Oil, Inc. v. Blaney*, No. 17-3938, 2017 WL 6367893, at *2 (E.D. Pa. Dec. 13, 2017) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)). Pennsylvania courts recognize the gist of the action doctrine that distinguishes between breach of contract claims and tort claims. *See generally Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006)). The *Hart* court explained:

6

> [A] breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*Id.* at 339-40 (emphasis omitted).  The Pennsylvania Supreme Court further explained the doctrine:

> [T]he nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.
>
> * * *
>
> The mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.
>
> * * *
>
> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Bruno*, 106 A.3d at 68-70 (internal citations omitted); *see also Philidor RX Servs. LLC v. Polsinelli PC*, No. 22-2836, 2023 WL 6290746, at *5 (3d Cir. Sept. 27, 2023) (affirming district

court's finding that allegations that attorneys failed to properly staff the case sounded in tort and not contract).

Kardosh's legal malpractice claim premised on a breach of contract is foreclosed by the gist of the action doctrine. Kardosh makes no allegations with respect to the terms of the contract. There are no allegations that McCallin failed to follow specific instructions pursuant to a contract between Kardosh and McCallin, or that a specific provision of the contract was breached. Instead, she claims that McCallin failed to act in good faith and for her benefit. Thus, Kardosh's legal malpractice claim is premised on tort liability. *See, e.g., Brenco Oil, Inc.*, 2017 WL 6367893, at *4 (E.D. Pa. Dec. 13, 2017) (finding the "gist of the action" was in negligence because, *inter alia*, plaintiff alleged the law firm "was *careless*, not that it *failed to perform* a specific task under the contract") (emphasis in original).

There are also plausibility problems with Kardosh's tort-based legal malpractice claim. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up). Kardosh does not allege sufficient facts about the alleged failure by McCallin to act in good faith and solely for Kardosh's benefit, and how she suffered an injury as a result. She alleges, only in conclusory terms, that McCallin acted against

her interests and sabotaged her case. Kardosh's malpractice claim does not meet the *Iqbal* pleading standard and will be dismissed.[7]

The Court also notes that a plaintiff asserting a professional liability claim in Pennsylvania must file a certificate of merit with the complaint or within sixty days after the filing of the complaint. *See* Pa. R.C.P. 1042.3. This requirement applies to parties who are proceeding *pro se*. If a certificate of merit is not signed by an attorney, the *pro se* party signing the certificate must attach to it a written statement from a licensed professional attesting to the likelihood of malpractice. Pa. R.C.P. 1042.3(e). The written statement must indicate that a reasonable probability exists that the care, skill, or knowledge exercised or exhibited by a defendant fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm. Pa. R.C.P. 1042.3(a)(l)-(2). The United States Court of Appeals for the Third Circuit has ruled that Rule 1042.3 constitutes substantive Pennsylvania law. *Cornish v. City of Philadelphia*, No. 14-6920, 2016 WL 233691, at *5 (E.D. Pa. Jan. 19, 2016) (citing *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011) (finding that Rule 1042.3 is substantive law and applicable in a diversity case brought in federal court). "Accordingly, that Rule governs any professional liability action in federal court to which Pennsylvania law applies." *Id.*

---

[7] Additionally, under Pennsylvania law, a plaintiff in a legal malpractice case must prove not only that her attorney committed professional negligence but also that the plaintiff would have been successful in the underlying action had the professional negligence not occurred. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (1998) ("In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case').").

### B. Fraudulent Misrepresentation

Under Pennsylvania law, to recover on a claim of fraudulent misrepresentation, a plaintiff must prove: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance. *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645-46 (Pa. 2021). A heightened standard applies to claims alleging fraud or mistake, which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023); *see also U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) ("A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue.'" (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002))). "But even if falsity is pleaded with the requisite particularity, those factual allegations must still satisfy the plausibility standard, which requires a 'reasonable expectation that discovery will reveal evidence' of the necessary elements of the claim." *City of Warren*, 70 F.4th at 681 (quoting *Twombly*, 550 U.S. at 556). Kardosh's allegations are insufficient to meet this heightened pleading standard. She does not allege sufficiently what material representation upon which she justifiably relied was recklessly false and how she was injured because of the alleged fraudulent misrepresentation. Accordingly, the fraudulent misrepresentation claim will be dismissed.

### C.     Intentional Infliction of Emotional Distress

To plead a plausible claim of intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that: (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe. *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)). There must also be evidence of a physical injury caused by the defendant's conduct. *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) ("Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct."). Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" meets this standard. *Hoy*, 720 A.2d at 754; *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010). Regarding this element, Pennsylvania law directs that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). Conduct found to be outrageous includes: (1) a defendant who, after striking and killing the plaintiff's son with an automobile, and after failing to notify authorities or seek medical assistance, buried the body in a field where it was discovered two months later and returned to the parents; (2) the intentional fabrication of records to suggest that a plaintiff had killed a third party which led to the plaintiff being indicted for homicide; and (3) the defendant's team physician releasing to the press information that the plaintiff was suffering from a fatal disease when the physician knew such information was false. *See Hoy*, 720 A.2d at 754. No allegations in the Complaint rise to this level of extreme conduct. Kardosh alleges that McCallin failed to

provide her with a copy of a motion for a continuance, failed to fully explain and discuss a conflict waiver, and acted against her interests in the custody matter by assisting the grandparents to intervene which resulted in the grandparents being awarded shared custody of the children. There is also no plausible suggestion that Kardosh suffered a physical injury. Accordingly, the intentional infliction of emotional distress claim is not plausible as alleged and will be dismissed.

### D.  Statute of Limitations

The legal malpractice claim premised on a breach of fiduciary duty, as well as the fraud and intentional infliction of emotional distress claims asserted by Kardosh are subject to a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524. McCallin's acts upon which Kardosh's claims are based occurred sometime between August 2020 when she commenced representation of Kardosh and December 2020 when the initial custody hearing was held. (*See* Compl. at 2-5.) Anticipating that her claims could be time-barred, Kardosh argues in the Complaint that tolling principles should be applied. (*Id.* at 9-11.) Kardosh represents that she "did not discover that McCallin had spoken with the grandparents prior to the custody case as she was lied to by both [Parties] until Mary Elian[8] refused to testify to when she first spoke with McCallin in court on Feb 3rd, 2025. Further McCallin has refused to provide the continued [sic] in which she filed on plaintiffs behalf in 2020 as well as the remaining billing statements." (*Id.* at 10.) Kardosh also claims that the statute of limitations can be tolled under the doctrine of equitable estoppel if the defendant made misrepresentations or omissions to conceal her malpractice. (*Id.*)

---

[8] It is unclear from the Complaint what role "Mary Elian" has in the custody matter.

Statutes of limitations begin to run when the cause of action accrues, which is usually the time a plaintiff is injured. *Dubose v. Quinlan*, 173 A.3d 634, 642 (Pa. 2017). Regarding a legal malpractice claim, the Pennsylvania Superior Court has explained:

> [T]he trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

*Wachovia Bank, N.A.*, 935 A.2d at 572-73 (citations and emphasis omitted). The Superior Court has provided further explanation of the discovery rule:

> The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. The party seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence.

*Commc'ns Network Int'l, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa. Super. Ct. 2018).

The fraudulent concealment exception "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right to inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citation omitted). "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Id.* However, "[t]he defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. Mere mistake or

13

misunderstanding is insufficient." *McClean v. Djerassi*, 84 A.3d 1067, 1070 (Pa. Super. Ct. 2013) (citation omitted).

Because Kardosh has failed to allege plausible claims as discussed *supra*, the Court need not consider at this time whether her claims are barred by the statute of limitations. However, it is worth observing that while Kardosh claims that she did not discover the harm of McCallin's actions until February 2025, in the initial Complaint in *Kardosh I*, filed in 2024, Kardosh included many of the same allegations against McCallin as presented in the case at bar. (*See Kardosh I*, ECF No. 2 at 7-11.)[9]  Indeed, in her prayer for relief in that case, she requested "the court to allow the lawsuit against my firmer [sic] attorney legal malpractice to be allowed to be heard for the reasons provided in oral argument." (*Kardosh I*, ECF No. 2 at 5.)  Furthermore, Kardosh filed thousands of pages of documents from the custody matter in support of her allegations in *Kardosh I* and *Kardosh II*. (*See, e.g., Kardosh I*, ECF No. 11 and *Kardosh II*, ECF No. 2.)  The myriad of documents that Kardosh submitted in *Kardosh I* indicate that she had formed the opinion that McCallin had acted against her interests and the alleged injury occurred much earlier than February 2025. (*See, e.g., Kardosh I*, ECF No. 11-3.)

## IV.   CONCLUSION

For the above reasons, the Court will grant Kardosh leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  She will be given an opportunity to file an Amended Complaint if she can

---

[9] Because McCallin was not named as a defendant in *Kardosh I*, Kardosh's allegations against McCallin in the initial Complaint were not addressed upon statutory screening. She did not pursue them in the Amended Complaint.

cure the deficiencies noted by the Court. An appropriate Order regarding amendment will be docketed separately.

**BY THE COURT:**

    /s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, J.**