IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA KARDOSH, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 25-CV-1946 |
| : | |
| CHERYL MCCALLIN, *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

SÁNCHEZ, J.                                                                                                    MAY 29, 2025

After this Court dismissed her original Complaint without prejudice, *pro se* Plaintiff Julia Kardosh filed an Amended Complaint. Kardosh asserts claims against Cheryl McCallin, Esquire, based on McCallin's representation of Kardosh in a Pennsylvania state court child dependency matter. She also names as additional Defendants Laura Baker, Esquire, another attorney who represented Kardosh in state court for a time, as well as Kardosh's parents, Mary Ellen and William Kardosh, who intervened in the custody matter. For the reasons that follow, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.    **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

In the initial Complaint, Kardosh alleged she retained McCallin on August 14, 2020, to represent her in family court proceedings in a custody dispute with the father of her two minor

---

[1] The factual allegations are taken from the Amended Complaint and publicly available records of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings). This is the third civil action Kardosh has commenced in federal court related to the state court custody matter. *See Kardosh v. Chester County and the Municipality of West Goshen, et al.*, Civil Action No. 24-5918 ("*Kardosh I*") and *Kardosh v. Chester County, et al.*, Civil Action No. 25-1344 ("*Kardosh II*"). On screening, the Court will take judicial notice of Kardosh's filings in her prior cases.

children, Joseph Henderson. (Compl. at 2.[2]) She averred that she paid McCallin for legal representation and entrusted her with "sensitive, protected information regarding her custody case." (*Id.*) Kardosh claimed that one year before she retained McCallin, however, McCallin was contacted by Mary Ellen and William.[3] (*Id.*) Kardosh asserted the "grandparents sought legal advice regarding pursuing grandparents' rights against" her. (*Id.*) She claimed McCallin failed to disclose her prior contact with the grandparents when Kardosh retained her, resulting in a conflict of interest in violation of the Pennsylvania Rules of Professional Conduct. (*Id.* at 3.)

Kardosh further claimed that after she paid $3,000 to retain McCallin, McCallin filed a motion for a continuance which included a provision that the grandparents intended to seek intervention in the custody matter. (*Id.*) Kardosh asserted McCallin failed to provide her with a copy of the motion and the filing was against her interests and sabotaged her case. (*Id.*) According to Kardosh, six weeks after McCallin filed the motion for a continuance, on September 30, 2020, McCallin left a voicemail message for Kardosh stating that the grandparents should intervene in the custody proceedings. (*Id.*) McCallin sent a conflict waiver to Kardosh on October 20, 2020, that Kardosh described as "vague [and] lacking sufficient details about the nature and scope of the conflict." (*Id.*) Kardosh claimed McCallin refused to answer her questions about the waiver, ignored all attempts at communication, declined to explain the implications of signing it, and, as a result, she was unable to make an informed decision about it.[4] (*Id.* at 3-4.) She surmised that McCallin "improperly utilized privileged information" to the advantage of the grandparents. (*Id.*) Kardosh alleged the motion McCallin

---

[2] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[3] Because several of the litigants share a sur-name, the court will refer to Julia Kardosh by her last name but her parents by their first names, or as "the grandparents."

[4] Kardosh also alleged that the waiver was predated "by the opposing party." (Compl. at 4.)

2

filed was adverse to Kardosh's interests and it was filed before the conflict waiver was signed. (*Id.*)  Kardosh further claimed McCallin "cherry picked by referral" Kardosh's new counsel. (*Id.*)

A hearing was held on December 10, 2020, and the grandparents were permitted to intervene in the custody matter.  (*Id.*)  Kardosh contends "the motion, and Defendant's failure to inform or consult Plaintiff, influenced the court's view of the case." (*Id.*)  As alleged, McCallin failed to challenge the grandparents' standing to intervene and, instead, convinced the court to grant the grandparents shared legal custody of the children, demonstrating a betrayal of Kardosh's trust and interests and a breach of McCallin's ethical duties.  (*Id.* at 5.)  Kardosh asserted that McCallin's misconduct caused her the loss of a fair opportunity to present her case in the custody proceedings, financial losses due to ineffective representation, emotional distress, and harmed her parental rights.  (*Id.*)

Based on these allegations, Kardosh presented claims for breach of contract, fraudulent misrepresentation, breach of fiduciary duty, "constructive fraud," and intentional infliction of emotional distress.  (*Id.* at 6-9.)  She also argued that the applicable statutes of limitations should be tolled based on the discovery rule, McCallin's fraudulent concealment, or public policy.  (*Id.* at 9-10.)

In a May 5, 2025 Memorandum and Order, the Court granted Kardosh *in forma pauperis* status, screened the Complaint pursuant to § 1915(e)(2)(B), and dismissed Kardosh's claims. (*See* ECF Nos. 5 and 6; *Kardosh v. McCallin*, No. 25-1946, 2025 WL 1314090 (E.D. Pa. May 5, 2025).)  Kardosh's Complaint was best construed as asserting state law claims for legal malpractice premised on breach of contract and breach of fiduciary duty theories, as well as claims of fraud and intentional infliction of emotional distress. *Kardosh*, 2025 WL 1314090, at *3 (E.D. Pa. May 5, 2025) (citing Compl. at 6-9 (Count I – Breach of Contract; Count II –

3

Fraudulent Misrepresentation; Count III – Breach of Fiduciary Duty; Count IV – Constructive Fraud; Count V – Intentional Infliction of Emotional Distress).)

The Court noted that under Pennsylvania law, an action for legal malpractice may be brought in either contract or tort. *Id.* (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. Super. Ct. 2007)). However, the gist of the action doctrine foreclosed Kardosh's legal malpractice claim based on a breach of contract as the allegations were based on tort liability. *Id.* at *3-4. Further, Kardosh's tort-based legal malpractice claim was not plausible as it did not meet the pleading standard. *Id.* at *4. The Court also explained that, to bring a professional liability claim in Pennsylvania, a plaintiff must file a certificate of merit with the complaint or within sixty days after the filing of the complaint. *Id.* at *5 (citing Pa. R.C.P. 1042.3 which provides, *inter alia*, if a certificate of merit is not signed by an attorney, the *pro se* party signing the certificate must attach to it a written statement from a licensed professional attesting to the likelihood of malpractice). The fraudulent misrepresentation claim was dismissed because Kardosh's allegations were insufficient to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.* The Court also determined Kardosh had failed to present allegations of extreme conduct that would support a plausible intentional infliction of emotional distress claim. *Id.*

The Court also addressed Kardosh's argument that tolling principles should be applied to her claims.[5] *Id.* at *6. The Court noted that legal malpractice claims premised on a breach of

---

[5] McCallin's acts upon which Kardosh based her claims occurred sometime between August 2020 when she commenced representation of Kardosh and December 2020 when the initial custody hearing was held. (*See* Compl. at 2-5.) However, Kardosh represented that she "did not discover that McCallin had spoken with the grandparents prior to the custody case as she was lied to by both [Parties] until Mary Elian [sic] refused to testify to when she first spoke with McCallin in court on Feb 3rd, 2025. Further McCallin has refused to provide the continued [sic] in which she filed on plaintiff[']s behalf in 2020 as well as the remaining billing statements." (*Id.* at 10.) Kardosh claimed the statute of limitations could also be tolled under the

4

fiduciary duty, as well as fraud and intentional infliction of emotional distress claims asserted are subject to a two-year statute of limitations and the limitations period begins to run when the cause of action accrues, which is usually the time a plaintiff is injured. *Id.* (citing 42 Pa. Cons. Stat. § 5524 and *Dubose v. Quinlan*, 173 A.3d 634, 642 (Pa. 2017)). The Court also explained how the discovery rule and fraudulent concealment can act to toll the statute of limitations. *See id.*

The Court, however, did not dismiss the Complaint on the basis of the statute of limitations. *Id.* The Court observed that while Kardosh asserted she did not discover the alleged harm of McCallin's actions until February 2025, Kardosh had included many of the same allegations against McCallin in this Complaint as she had in the initial complaint in *Kardosh I*, which was filed in 2024. *Id.* (citing *Kardosh I*, ECF No. 2 at 7-11). Additionally, the thousands of pages of documents that she submitted in *Kardosh I* and *Kardosh II* indicated that Kardosh had formed the opinion that McCallin acted against her interests, and the alleged injury occurred, much earlier than February 2025. *Id.* (citing *Kardosh I*, ECF No. 11-3).

The Court dismissed Kardosh's claims under § 1915(e)(2)(B)(ii) as not plausibly pled and granted her thirty-days leave to file an amended complaint to the extent that she could cure the deficiencies noted by the Court. (*See* ECF Nos. 5 and 6.) After Kardosh requested a ninety-day extension, which was granted in part (*see* ECF Nos. 7 and 8), on May 16, 2025, Kardosh filed the Amended Complaint that is now before the Court. (ECF No. 9 ("Am. Compl.").)

Kardosh again invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Am. Compl. at 3-4.) Kardosh asserts that she is presenting only state law tort claims in this action. (*Id.* at 5.) She expressly states that she is not presenting a legal malpractice claim, which

---

doctrine of equitable estoppel if the defendant made misrepresentations or omissions to conceal her malpractice. (*Id.*)

would require a certificate of merit under Pa. R. Civ. P. 1042.3, and only presents "intentional tort claims for fraudulent misrepresentation, breach of fiduciary duty (based on Defendant's[6] conflict of interest and disloyal conduct), constructive fraud, civil conspiracy, and intentional infliction of emotional distress" under Pennsylvania law. (*Id.*) Kardosh's lengthy Amended Complaint presents her claims in much greater detail than the initial Complaint; however, she may not proceed because the claims are time-barred as discussed below.[7]

In her Amended Complaint, Kardosh alleges as follows: On or about August 14, 2020, she retained Defendant McCallin to represent her in a child custody dispute in Chester County and paid a $3,000 retainer. (Am. Compl. at 7.) Of note to Kardosh, the retainer agreement provided she was to receive copies of all documents McCallin filed with the court. (*Id.*) Kardosh did not know at that time that Mary Ellen had contacted McCallin in 2019 "regarding legal strategies to obtain custody" of Kardosh's children.[8] (*Id.*) McCallin did not disclose this conflict of interest to Kardosh, which disqualified her from representing Kardosh. (*Id.*) After

---

[6] Throughout the Amended Complaint, Kardosh frequently refers to "Defendant" in the singular without specifying to which Defendant she refers.

[7] Kardosh contends her claims "have been substantiated by a plethora of evidence, most of which has been provided to the court in the over 300 page preliminary objections as well as other pertinent filings provided in an effort of full transparency as the evidence speaks for itself. Plaintiff has been denied review of the fraudulent standing of the grandparents gained through fraud and deception and clear ethical violations that the trial court had not only dismissed but find [sic] through interior [sic] lengths to conceal and prevent review and denied superior court review since first appeale[d] in 2021 and continue to be refused review. . . ." (Am. Compl. at 5.) She avers she "provides copious amounts of evidence so [the] court can review the validity of this claim rather than being limited to assumption of Plaintiff's truthfulness as a measure of good faith and transparency to compensate for her lack of legal knowledge and skill." (*Id.* at 5-6.) The Court understands Kardosh to refer, at least in part, to the thousands of pages of documents from the custody matter that she submitted in support of her allegations in *Kardosh I* and *Kardosh II*. (*See, e.g., Kardosh I*, ECF No. 11 and *Kardosh II*, ECF No. 2.)

[8] Kardosh alleges that August 6 and September 30, 2020 voicemail messages from McCallin demonstrate she had previously communicated with the grandparents before accepting representation of Kardosh. (Am. Compl. at 8.)

6

McCallin was retained, Kardosh provided her with a medical release and Mary Ellen began sending McCallin emails regarding her involvement in the children's lives. (*Id.* at 7-8.) On or about August 19, 2020, McCallin filed a motion for a continuance in the custody case. (*Id.* at 8.) McCallin falsely asserted the continuance was needed due to her vacation and the motion disclosed that the grandparents intended to intervene in the custody proceedings. (*Id.*) Kardosh was not informed of this prior to the filing of the motion, did not authorize it, and McCallin refused to provide Kardosh with a copy of the motion in violation of the retainer agreement. (*Id.*) On or about August 20, 2020, Defendant Baker was retained to represent Kardosh. (*Id.* at 10.) Kardosh alleges she contacted McCallin on August 22 and September 25 to inquire who was representing her and with whom she should communicate. (*Id.* at 61-62.)

After a September 11, 2020 emergency custody hearing, Kardosh was awarded primary physical custody and all overnights. (*Id.* at 62.) The state court ordered psychological evaluation of both parents, based in part on the grandparents' involvement. (*Id.* at 8.) Kardosh contends Mary Ellen sent an email to the evaluator that cast Kardosh in a negative light. (*Id.* at 8, 62-63.)

McCallin provided a conflict-of-interest waiver to Mary Ellen so McCallin could represent the grandparents.[9] (*Id.* at 8, 12.) Mary Ellen instructed Kardosh to sign it on or about October 19, 2020, falsely claiming the waiver would only allow the grandparents to testify at the custody conference and they could otherwise not attend if they were not added as parties. (*Id.* at 12.) Kardosh avers the waiver was vague and sought clarification from McCallin but McCallin

---

[9] According to Kardosh, despite being paid $3,000 to represent her, McCallin refused to provide Kardosh with itemized billing records for the majority of her representation, repeatedly lied to Kardosh claiming she never billed Kardosh for services, yet did not reimburse Kardosh. (Am. Compl. at 18.) She also denied filing a motion for a continuance as Kardosh's counsel (*Id.* at 19.)

7

refused her calls for two days; Kardosh signed the waiver on October 20 or 21. (*Id.* at 8, 12, 63.) Kardosh alleges Mary Ellen backdated Kardosh's signature because McCallin had already filed the petition to intervene. (*Id.* at 8, 9, 12, 63.) In the meantime, McCallin had been corresponding with Mary Ellen instead of Kardosh. (*Id.* at 8-9.) After reading the petition to intervene, Kardosh realized it falsely alleged the grandparents had acted as *de facto* custodians since the children's birth. (*Id.* at 12.) She texted "the opposing party" expressing "confusion, betrayal, and outrage." (*Id.*)

Kardosh alleges McCallin referred her to Baker to assist with an impending emergency custody hearing and selected Baker because she would not challenge the grandparents' standing or expose McCallin's misconduct and would collude with McCallin in her scheme. (*Id.* at 10.) Unbeknownst to Kardosh, Baker's services were paid for by the grandparents who coordinated directly with Baker without Kardosh's involvement, despite Kardosh's repeated instructions to copy her on any emails sent to the grandparents. (*Id.*) Baker allowed the grandparents to participate in drafting and editing Kardosh's answer to the custody complaint filed by the children's father and the response to the petition to intervene. (*Id.*) Against Kardosh's express wishes, Baker submitted to the court a custody proposal authored by Mary Ellen, not Kardosh, that recommended legal and physical custody be awarded jointly to the grandparents.[10] (*Id.* at 11.) Kardosh had been awarded legal and physical custody during the September 11, 2020 hearing (*see id.* at 62) and did not want the grandparents to intervene or to be awarded custody (*see id.* at 11). Baker continued to consult with the grandparents after they had retained McCallin to represent their interests. (*Id.* at 10-11.)

---

[10] Kardosh claims that her exhibits were not included in the filing and the filing included false statements about the grandparents' involvement in the lives of the children, in an attempt to paint the grandparents in a positive light as they would seek intervention. (*See* Am. Compl. at 11, 14, 62-63.)

8

On December 10, 2020, a hearing was held on the petition to intervene, and the grandparents were permitted to intervene pursuant to 23 Pa. Cons. Stat. § 5325, not § 5324,[11] granting them the right to seek supervised visitation with the children. (*Id.* at 12-13, 66.) The right to intervene pursuant to § 5325 was based on Kardosh's consent; however, Kardosh avers that she was lied to regarding the purpose of the intervention. (*Id.* at 13, 66.) On January 14, 2021, a conciliation hearing was held. (*Id.* at 13-14, 66-67.) Prior to the hearing, Baker filed a motion to add the grandparents to the custody order to which Kardosh objected. (*Id.* at 14, 16.) The grandparents were granted shared legal custody of the children. (*Id.* at 67.)

Kardosh avers the betrayal by her counsel and resulting loss of custody caused her profound emotional distress, trauma, and lasting psychological harm that has triggered physical manifestations. (*See id.* at 14-15.) According to Kardosh, the consequences of Defendants' intentional actions have been emotionally, physically, and financially catastrophic for Kardosh and her children. (*Id.* at 17-19.)

Based on these allegations, Kardosh presents the following claims: fraudulent misrepresentation (Count I) (*see id.* at 20-26); breach of fiduciary duty (Count II) (*see id.* at 27-32); constructive fraud (Count III) (*see id.* at 32-35); conspiracy (Count IV) (*see id.* at 35-41); and intentional infliction of emotional distress (Count V) (*see id.* at 41-46).[12] Kardosh again

---

[11] Section 5324 establishes who may file an action for any form of physical custody or legal custody, while section 5325 provides that grandparents and great-grandparents may file an action for partial physical custody or supervised physical custody in certain situations. *See* 23 Pa. Cons. Stat. §§ 5324, 5325.

[12] Kardosh refers at times throughout the Amended Complaint to a breach of contract. (*See, e.g.,* Am. Compl. at 45-46, 50.) However, based on Kardosh's expressed intent, the Court does not construe the Amended Complaint as presenting a breach of contract claim. Furthermore, a passing reference does not bring an issue before the court. *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No.

contends tolling principles should be applied because she did not discover that she had been injured by Defendants' actions until "2023-2025" as they had been concealed. (*Id.* at 46-49.) She posits that she did not discover the full extent of the breach of duties until February 3, 2025.[13] (*Id.* at 50.) She further avers that to apply the statute of limitations strictly would reward the Defendants' duplicity and punish her. (*Id.* at 49.) As relief, Kardosh seeks monetary damages. (*See id.* at 50-54.)[14]

## II.  STANDARD OF REVIEW

Because Kardosh has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen the Amended Complaint and dismiss it if, among other things, it fails

---

21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Additionally, as the Court explained when screening the initial Complaint, the gist of this action lies in tort. *See Kardosh*, 2025 WL 1314090, at *3-4. Moreover, a plaintiff may not avoid the filing of a certificate of merit by mislabeling claims. *See Perez v. Griffin*, 304 F. App'x 72, 75 (3d Cir. 2008) (*per curiam*) (plaintiff could not avoid certificate of merit requirement by labeling claims as claims for fraud or breach of contract, when the claims were based upon an alleged breach of duties owed in the course of legal representation, which required a certificate of merit); *Diaz v. Gelber*, No. 24-0856, 2025 WL 889776, at *6 (M.D. Pa. Mar. 21, 2025) (finding a plaintiff cannot evade the substantive requirement of Rule 1042.3 by casting his complaint, in part, as a breach of contract where the breach of contract allegations were grounded in the alleged failure of a licensed professional to perform in accordance with the skill and care required of the profession); *see also Sabella v. Est. of Milides*, 992 A.2d 180, 186 (2010) ("To ascertain the plaintiff's theory of liability, courts must examine the averments in the complaint.").

[13] Kardosh has been vague about the details of the February 3, 2025 date, other than to allege that her claims should be deemed to have accrued no earlier than this date. (*See* Am. Compl. at 50.) She asserted in the initial Complaint that she "did not discover that McCallin had spoken with the grandparents prior to the custody case as she was lied to by both [parties] until Mary [Ellen] refused to testify to when she first spoke with McCallin in court on Feb 3rd, 2025." (*See* Compl. at 10.) In the Amended Complaint, Kardosh alleges only that she realized "during trial testimony on February 3, 2025 that Defendant had actively assisted the opposing party while purporting to represent Plaintiff." (Am. Compl. at 47.)

[14] Kardosh also includes in the Amended Complaint a list of referenced cases (Am. Compl. at 55-56), a list of exhibits although no exhibits are attached (*id.* at 58-59), and a "Timeline" that describes the custody proceedings in chronological order (*id.* at 60-68.)

10

to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, a court may dismiss a complaint based on an affirmative defense, such as the statute of limitations "when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

As Kardosh is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v.*

*Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## IV.    DISCUSSION

Kardosh makes clear in the Amended Complaint that she presents only tort claims for fraudulent misrepresentation, breach of fiduciary duty, constructive fraud, civil conspiracy, and intentional infliction of emotional distress under Pennsylvania law. (Am. Compl. at 5.) The tort claims asserted by Kardosh are subject to a two-year statute of limitations, as are the newly added allegations of conspiracy. *See* 42 Pa. Cons. Stat. § 5524; *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 287 (Pa. Super. 1997) (the statute of limitations for conspiracy is the same as that for the underlying action which forms the basis of the conspiracy).

As the Court previously explained, a limitations period begins to run when the cause of action accrues, which is usually the time a plaintiff is injured. *Dubose*, 173 A.3d at 642. "Thus, the clock begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246-47 (Pa. 2021) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). "If the plaintiff fails to file before the clock expires, the statute of limitations bars the suit." *Id.* The discovery rule tolls the running of the limitations period "when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572-73 (Pa. Super. 2007) (citations and emphasis omitted). The Pennsylvania Superior Court has provided further explanation of the discovery rule:

> The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run

> until the discovery of the injury is reasonably possible.  The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.  The party seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence.

*Commc'ns Network Int'l, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa. Super. Ct. 2018). Pennsylvania's formulation of the discovery rule "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Rice*, 255 A.3d at 247 (quoting *Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009)).

The fraudulent concealment exception "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right to inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citation omitted).  "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Id.*  However, "[t]he defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied.  Mere mistake or misunderstanding is insufficient." *McClean v. Djerassi*, 84 A.3d 1067, 1070 (Pa. Super. Ct. 2013) (citation omitted).  Fraudulent concealment is "rooted in the recognition that fraud can prevent a plaintiff from even knowing that he or she has been defrauded." *Rice*, 255 A.3d at 248.

Kardosh's claims are based on Defendants' acts that occurred between August 2020 when McCallin commenced representation of Kardosh and the January 14, 2021 hearing when the grandparents were awarded shared custody after being permitted to intervene.  Liberally construing the Amended Complaint, Kardosh's injury occurred on January 14, 2021, when the

grandparents were granted shared custody because they were permitted to intervene. Kardosh would have known she was injured when the grandparents were awarded custody. Even if the Court were to credit Kardosh's contention that she was not aware at that time, but at a subsequent date, any contention that the limitations period did not begin to run until February 3, 2025 is not plausible. As the Court noted in the May 5 Memorandum, in *Kardosh I*, which was filed in November 2024, Kardosh included many of the same allegations against McCallin as presented in the case at bar. (*See Kardosh I*, ECF No. 2 at 7-11.) Indeed, in her prayer for relief in that case, she requested "the court to allow the lawsuit against my firmer [sic] attorney legal malpractice to be allowed to be heard for the reasons provided in oral argument." (*Kardosh I*, ECF No. 2 at 5.)

      Kardosh's prior judicial filings make clear that she has been alleging that her counsel acted against her interests in various state court pleadings dating back to 2021. Kardosh acknowledges this in the "Timeline" she includes in the Amended Complaint. (*See* Am. Compl. at 60-68.) When summarizing a portion of the lengthy state court custody proceedings in the Timeline, Kardosh indicates that after the January 14, 2021 hearing at which the grandparents were granted shared legal custody, Henderson filed a demand for trial and subsequently filed preliminary objections to the grandparents' standing. (*See id.* at 67.) At a September 14, 2021 hearing, the court determined the children's primary address to be the grandparents' and granted 50/50 custody to the grandparents and Kardosh. (*Id.* at 68.) Kardosh avers in the Timeline that on September 30, 2021, she filed a "response with new matter to [the] father's preliminary objections **showing the proof of her lawyers['] malfeasance and unethical actions**." (*Id.* (emphasis added).) She represents that the preliminary objections were denied by the state court on November 1, 2021, and that she and Henderson appealed *nunc pro tunc* and were denied. (*Id.*)

Kardosh submitted copies of numerous state court filings as exhibits in *Kardosh I*, several of which are relevant to this point. For example, she submitted to this Court a copy of the Answer to Plaintiff's Preliminary Objections as to Standing of Third Party Intervenors that she filed in the state court on October 21, 2021, in which she alleged, for example, that "ethical issues regarding mother's attorney's were breached," "the Grandparents were in communication with Mother's council [sic] long before Conflict was waived," and the "court should be made aware of the misconduct by council [sic] and the effect of the case." (*See Kardosh I*, Exh. 11-4 at 31.) The Answer included preliminary objections in which Kardosh argued that she was the victim of fraud committed by McCallin and Baker based on their actions to Kardosh's detriment, including enabling the grandparents intervene and directly communicating with the grandparents. (*See Kardosh I*, Exh. 11-4 at 33-43). Kardosh also included in Exhibit 11-4 in *Kardosh I* a copy of the Petition Nunc Pro Tunc that Kardosh and Henderson filed with the state court on November 1, 2021, in which they argued that McCallin and Baker breached duties to Kardosh by working with the grandparents to intervene in the custody proceedings and that Kardosh and Henderson's parental rights had been violated. (*See Kardosh I*, Exh. 11-4 at 99-101). Kardosh also provided the Court with a copy of a March 25, 2024 Emergency Motion for Contempt, in which Kardosh represented to the state court that she became aware in late 2021 of collusion between her attorneys and the intervenors and that she had submitted to the court "evidence of the unethical conduct." (*See Kardosh I*, Exh. 11-5 at 336.)

Putting aside the merits of her claims against Defendants, and even using November 1, 2021 as the accrual date, Kardosh's claims are clearly time-barred. The documents Kardosh filed in the state court, and subsequently submitted to this Court, demonstrate that the tort claims based on the alleged acts of McCallin, Baker, and her parents between August 2020 and January 2021 that resulted in the grandparents' intervention in the custody proceedings and the January

15

2021 court order directing shared custody, accrued far more than two years prior to the April 15, 2025 filing of this action. Further, the state court filings demonstrate that the tolling doctrines do not operate to revive her claims because Kardosh was clearly aware of the injury she alleges resulted from Defendants' actions, and indeed, articulated her awareness in those state court filings. Accordingly, her claims will be dismissed.

## IV. CONCLUSION

For the above reasons, the Court will dismiss the Amended Complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Leave to amend will not be given, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). To the extent that Kardosh requested appointment of counsel, such request is denied. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

A dismissal Order follows, which shall be docketed separately. *See* Fed. R. Civ. P. 58.

**BY THE COURT:**

/s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, J.**